RECEIVED
SDNY PRO SE OFFICE

2025 MAY 27  AM 10: 30

**UNITED STATES DISTRICT COURT**

SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

DR. CORINNE GALGAY, in her official and personal capacities,

DOUG COLLINS, in his official and personal capacities,

Defendants.

Civil Action No. _____

# 25 CV 4423

**CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983, THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, THE ALL WRITS ACT, AND THE UNITED STATES CONSTITUTION**

(Nature of Suit Code: 950 – Civil Rights)

(Filed by a Pro Se Litigant under Rule 8 of the Federal Rules of Civil Procedure)

(Emergency Relief Sought under 28 U.S.C. § 1651 – The All Writs Act)

(Jury Trial Demanded)

---

## PARTIES

1. Plaintiff, JANE DOE, is a  United States Army veteran who served in Iraq during Operation Iraqi Freedom. She is a survivor of military sexual trauma, traumatic brain injury, and service-connected post-traumatic stress disorder. She is the mother of five minor children and caregiver to a disabled veteran spouse. She brings this action under a pseudonym for the safety of her family and herself.

2. Defendant, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, is a federal agency headquartered in Washington, D.C., responsible for delivering healthcare, housing

support, and veteran protections through its sub-agency, the Veterans Health Administration. The Department was responsible for overseeing the programs and providers who directly and indirectly caused Plaintiff's harm.

3. Defendant, DR. CORINNE GALGAY, is a licensed clinical psychologist employed by the Department of Veterans Affairs at the Washington D.C. Veterans Affairs Medical Center. She is sued in her official and personal capacities for removing the Plaintiff from trauma-based care without process, enabling the falsification of medical records, and initiating the pattern of retaliation detailed in this complaint. Dr. Galgay also holds an active license to practice psychology in the State of New York, further establishing her legal ties to this jurisdiction.

4. Defendant, DOUG COLLINS, is the Secretary of the United States Department of Veterans Affairs and the highest-ranking official responsible for overseeing the conduct of the agency and its personnel. He is sued in his official and personal capacities for knowingly allowing and perpetuating retaliation against the Plaintiff after she made protected disclosures under federal law.

## PRELIMINARY STATEMENT

This is a civil rights action brought by a United States Army combat veteran who served in Iraq during the deadliest year of Operation Iraqi Freedom. The Plaintiff is a survivor of multiple rapes during military service, traumatic brain injury, and post-traumatic stress disorder. After returning home, she sought trauma-based care through the Department of Veterans Affairs. Instead of receiving protection, she was met with silencing, retaliation, medical betrayal, and the institutional dismantling of her care.

In April 2024, after raising protected complaints about misconduct at the Washington D.C. Veterans Affairs Medical Center, the Plaintiff was abruptly removed from trauma-based programming without process, placed under surveillance by Suicide Prevention, and subjected to coordinated falsification of her medical record. Her psychiatric medications were altered without in-person evaluation. Her emotional reactions were pathologized as psychiatric instability. Her suicidal ideation was treated as an institutional liability rather than a clinical emergency.

This retaliation originated under the supervision of Dr. Corinne Galgay, who holds active licensure in both the District of Columbia and the State of New York. It was sustained under the federal authority of Secretary Doug Collins, who had the power to stop the harm and chose not to.

The Plaintiff is no longer safe in the legal jurisdictions of Washington D.C., Maryland, or Virginia, where her complaints have been procedurally buried or retaliated against. She brings this action in the Southern District of New York because it is the only remaining federal forum in which her claims may be adjudicated free from prior bias or exposure. The Defendant, Dr.

Corinne Galgay, is licensed to practice in this District. The Plaintiff has no other option. She is not filing this case as a matter of strategy. She is filing it to survive.

**Laws Violated**

- First Amendment to the United States Constitution

  (Retaliation for protected speech and petitioning for redress of grievances)

- Fifth Amendment to the United States Constitution

  (Denial of due process and equal protection under federal authority)

- Americans with Disabilities Act of 1990 (ADA), Title II

  (42 U.S.C. §§ 12131–12134; failure to accommodate mental health disabilities)

- Rehabilitation Act of 1973, Section 504

  (29 U.S.C. § 794; discrimination by a federally funded agency)

- Fair Housing Act (FHA), as amended

  (42 U.S.C. § 3604(f); denial of housing protections related to disability)

- Declaratory Judgment Act

  (28 U.S.C. §§ 2201–2202; legal determination of rights and responsibilities)

- Veterans Health Administration Handbook 1163.04

  Psychosocial Rehabilitation and Recovery Centers (PRRCs)

  (Mandates individualized, recovery-oriented programming; violated through sudden removal)

- 38 C.F.R. § 17.33

  Patient Rights

  (Guarantees participation in treatment planning, access to respectful care, and protection

from retaliation)

- 38 U.S.C. § 7332

  Confidentiality of Medical Records

  (Prohibits disclosure or misrepresentation of records involving mental health and substance use)

- 38 U.S.C. § 1710 and § 1720D

  Eligibility and Access to Specialized Care

  (Veterans with service-connected PTSD and MST are entitled to specific types of care, including trauma-based therapy)

## STATEMENT OF FACTS

### I. Background and Service History

1. The Plaintiff is a United States Army combat veteran who served from 2007 to 2008 during the deadliest year of the Iraq War.

2. She was deployed to the region known as the Triangle of Death, conducting patrols through Iskandariyah, Latifiyah, Mahmoudiyah, Yusufiyah, Jurf Al-Sakhar, Zubaida, and Zukaytun.

3. During this deployment, the Plaintiff experienced daily exposure to IEDs, snipers, mortar fire, and ambushes, while also enduring repeated sexual assaults by individuals within her chain of command.

4. After reporting abuse by a senior non-commissioned officer, the Plaintiff was reassigned as punishment to a front-line unit comprised of infantrymen and cavalry scouts—a decision that exposed her to further trauma, isolation, and a near-death experience.

5. The Plaintiff was raped in the Red Zone and has lived with the ongoing impact of military sexual trauma, post-traumatic stress disorder, and traumatic brain injury ever since.

6. She returned to the United States with a 100% service-connected disability rating and has spent over a decade navigating the Department of Veterans Affairs healthcare system in search of trauma-informed care.

7. In 2023, she was accepted into the Psychosocial Rehabilitation and Recovery Center (PRRC) at the Washington D.C. Veterans Affairs Medical Center—a trauma-based program specifically designed for veterans living with complex psychiatric conditions and histories of institutional betrayal.

8. The Plaintiff viewed PRRC as a necessary and stabilizing intervention. It was a space where she could process trauma, manage her symptoms, and receive long-overdue care while parenting five children and caring for her disabled veteran husband.

9. For a time, PRRC was a lifeline. Then, it became a weapon.

## II. Protected Disclosures and the Onset of Retaliation

10. In early 2024, the Plaintiff began raising concerns about the structure, leadership, and safety of the Psychosocial Rehabilitation and Recovery Center (PRRC) program at the Washington D.C. Veterans Affairs Medical Center.

11. She submitted formal complaints through secure messaging and email, reporting a hostile therapeutic environment, including inconsistent class scheduling, culturally insensitive program decisions, and verbal aggression by another veteran participant that went unaddressed by staff.

12. The Plaintiff repeatedly expressed concern that she and other veterans—especially Black female veterans—were not being treated with dignity or safety. She documented that trauma-related content was being mishandled, and that staff responses to veterans in distress were often passive or dismissive.

13. In a March 2024 email to Dr. Corinne Galgay, Plaintiff wrote:

"PRRC is my self-care. It's hard. It's daunting. But it was supposed to be something that was beautifully painful."

14. She described feeling retraumatized under Dr. Galgay's supervision, stating:

"How I have been treated by you, and those who are above you in local leadership has caused many wounds to open and the cleanup has to be done by me."

15. The Plaintiff raised specific safety concerns regarding the presence of a male veteran who had verbally assaulted her in a group session. Despite raising this issue with Dr. Galgay and other staff, the male veteran remained in classes. The Plaintiff was forced to log out of sessions to protect herself.

16. She warned the PRRC team:

"Does something have to actually happen to me for you to take me seriously? Do I need to stay in class with him and take another chance at being attacked?"

17. In response to her protected complaints, VA leadership—including Dr. Galgay—began isolating her from staff support, excluding her from group activities, and limiting her access to the program. Her emotional responses were recast as clinical instability. Her advocacy was reframed as noncompliance.

18. The Plaintiff explicitly told the PRRC team that she did not feel safe, and that the program's structure was causing her psychological harm. She did not receive protection. Instead, her communications were shared behind her back and used to initiate her removal from care.

19. On April 3, 2024, the Plaintiff was informed that she had been discharged from the PRRC without warning, without a treatment plan, and without any notice or opportunity to respond.

20. That same day, she called her Polytrauma provider, Dr. Scott Levson, and told him she felt "betrayed and broken." In his note, he wrote:

"She indicated that while she was 'broken' by our last session she did not know who else to call to 'vent' about this."

## III. April 5, 2024 – Suicide Prevention Outreach and Paper Trail Collusion

21. On April 5, 2024, two days after being discharged from trauma-based care, the Plaintiff entered a state of active suicidal crisis. She attempted to seek support after receiving an out-of-office reply from her trusted provider, Dr. Parin Zaveri. His message directed her to Stephen Siegelman, Dr. Rife-Freese, and Dr. Peer.

22. The only person who spoke with her directly was Stephen Siegelman. No one else followed up.

23. At 10:43 a.m., Robert J. Collins, RN, entered a Clinical Contact Center (CCC) triage note claiming:

"The veteran called the CCC and is requesting the provider call her. This writer advised that a message would be sent to the provider for further assistance."

24. This was false. The Plaintiff never called the CCC and never spoke to Collins. Collins also misrouted the case to a PACT provider outside the Plaintiff's mental health team.

25. At 11:03 a.m., Stephen Siegelman, LCSW, entered a note stating:

"Explored for safety – Veteran reported through various means that she is not suicidal nor homicidal at this time."

26. This language is clinically vague and deliberately misleading. The Plaintiff never denied suicidal ideation. No structured suicide risk assessment was documented. There was no corroborating communication. The phrase "various means" was designed to erase liability without evaluation.

27. At 3:42 p.m., Dr. Ninala Wilkinson, Psychiatrist, entered a mental health addendum that relied on the above two false notes. It stated:

"Spoke with patient… Patient was speaking rapidly with pressured speech and offered her [medication redacted]… patient is amenable to take this… requested increase in [medication redacted]… advised her to take 1 dose of [medication redacted] which she plans to do… agreeable to go to MHC on Monday or Tuesday next week."

28. These statements were fabricated. The Plaintiff never requested medication changes and never agreed to appear in person. She later explicitly told Dr. Wilkinson that she was afraid to return to the VA and requested that medications be mailed. The increases were prescribed anyway and shipped to her home.

29. This psychiatric manipulation occurred while the Plaintiff was in suicidal crisis, parenting five children—including a five-month-old infant—and caring for a disabled husband. She remained under Dr. Wilkinson's care out of fear that refusal could result in escalation or

state involvement.

30. Dr. Wilkinson later said to the Plaintiff:

"Are you sure you're experiencing suicidal ideation? Because they told me I have to call the police if you say you are."

31. The Plaintiff interpreted this as a threat—not a safety measure. It taught her that expressing suicidal ideation would result in institutional punishment. Her clinical disclosures were being surveilled, not protected.

32. Dr. Wilkinson's note also routed the Plaintiff's psychiatric follow-up to Dr. Kwesi Dunston, a psychologist with a documented background in forensic corrections and high-security inmate evaluation. The Plaintiff had no prior relationship with Dr. Dunston and was never consulted about this transfer.

33. At 2:07 p.m. on April 10, 2024, Dr. Parin Zaveri, the Plaintiff's former trusted provider, acknowledged receipt of the suicide prevention note entered by Siegelman—but did not respond, intervene, or follow up.

34. The Plaintiff now believes that Stephen Siegelman and Robert J. Collins colluded, intentionally coordinating notes to downplay her crisis. The medical record shows no objective evaluation, no safety plan, and no clinician accountability. Only the appearance of protocol.

## IV. Constructive Abandonment and Jurisdictional Flight to the Southern District of New York

35. After April 5, 2024, the Plaintiff's trust in the Department of Veterans Affairs was irreparably broken. Her medical record had been manipulated. Her suicidal ideation was downplayed. Her medications were altered without consent. And her trauma was reframed as psychiatric instability—based not on clinical evaluation, but on organizational retaliation.

36. The Plaintiff attempted to remain in communication with her assigned psychiatrist, Dr. Ninala Wilkinson, not out of trust, but out of fear. When she disclosed her suicidal ideation, Dr. Wilkinson stated:

"Are you sure you're experiencing suicidal ideation? Because they told me I have to call the police if you say you are."

This was not a clinical safety plan. It was a warning.

37. In her April 5, 2024 psychiatric note, Dr. Wilkinson documented that the Plaintiff:

"was amenable to take [medication redacted], requested an increase in [medication redacted], agreed to follow up at the Mental Health Clinic, and that a message had been sent to Dr. Kwesi Dunston advising to submit a consult."

None of these statements were true. The Plaintiff did not agree to return to the VA, did not request any medication increase, and did not consent to a consult with Dr. Dunston—a forensic psychologist with experience evaluating incarcerated individuals, not trauma-exposed veterans.

38. The Plaintiff later asked Dr. Wilkinson why this language appeared in her record. Dr. Wilkinson told her that "they said you were manic," and that "they told me to stop your medication." The Plaintiff immediately recognized that decisions were being made outside the treatment room—in backchannel meetings to which she was not a party.

39. The Plaintiff now believes Dr. Wilkinson's note was not based on clinical judgment, but was coerced by institutional pressure. The use of phrases like "amenable" and "calmer" were not descriptive—they were pre-scripted language designed to make her appear compliant with a treatment plan she never consented to.

40. Meanwhile, her psychiatric care was redirected to Dr. Kwesi Dunston, without her knowledge. Dr. Dunston had never treated the Plaintiff before, and had no documented trauma specialty. He was introduced into her record through a fabricated chain of "referral" language—not clinical need.

41. The Plaintiff was not evaluated. She was not protected. She was managed. The VA system that claimed to support her had become the very source of her destabilization.

## LEGAL CLAIMS

## COUNT I: Retaliation in Violation of the First Amendment to the United States Constitution

(Against Defendants Corinne Galgay and Doug Collins in their official and personal capacities)

1. Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

2. The First Amendment guarantees every citizen the right to speak freely, to petition the government for redress of grievances, and to do so without fear of retaliation by federal actors.

3. Plaintiff engaged in constitutionally protected speech by filing internal complaints, secure messages, and external reports—including to the White House Hotline, the Veterans Affairs Central Office, and program leadership—regarding misconduct, safety violations, and discriminatory practices at the Washington D.C. Veterans Affairs Medical Center.

4. Following these protected disclosures, the Plaintiff was removed without warning from trauma-based care, falsely documented as unstable, chemically redirected without consent, and isolated from the VA health system through coordinated administrative acts.

5. These retaliatory acts originated under the supervision and direct involvement of Dr. Corinne Galgay, and have been sustained by the institutional inaction of Secretary Doug Collins, who—despite being newly appointed—has taken no corrective action, even as he is actively defended by the Department of Justice in related matters.

6. Secretary Collins is fully aware of the Plaintiff's legal claims, factual record, and continued suffering. He has the authority at any time to resolve these claims, issue corrective policy, or extend emergency protections under the powers granted to his office. He has done none of these.

7. Instead, Secretary Collins has made public statements and media appearances highlighting veteran suicide and homelessness as national crises, while knowingly allowing the Plaintiff—whose medical records show active suicidal ideation, housing distress, and verified systemic retaliation—to remain cut off from services.

8. This deliberate inaction constitutes a continuation of retaliatory harm. The Plaintiff has proven the violations. The records are in federal hands. Secretary Collins has chosen performance over protection. His inaction is not passive—it is legally and constitutionally consequential.

**COUNT II: Violation of the Americans with Disabilities Act (ADA), Title II**

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

1. Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

2. Title II of the Americans with Disabilities Act of 1990, codified at 42 U.S.C. §§ 12131–12134, prohibits public entities—including the United States Department of Veterans Affairs—from excluding qualified individuals with disabilities from participation in or the benefits of services, programs, or activities of a public entity, or subjecting such individuals to discrimination.

3. The Plaintiff is a qualified individual with disabilities, including post-traumatic stress disorder, traumatic brain injury, and other psychiatric and medical conditions recognized as service-connected by the Department of Veterans Affairs.

4. Plaintiff applied for and was admitted to trauma-based mental health services at the PRRC program, a specialized service funded and administered by the Veterans Health Administration.

5. Rather than accommodate the Plaintiff's disabilities or protect her safety, the VA removed her from trauma-based care without process, falsely labeled her as "disruptive," mischaracterized her crisis as mania, and denied her access to further accommodations including safe follow-up care, medication management, and suicide prevention resources.

6. These acts were not accidental. They followed protected complaints, and they were documented in the VA's own record system.

7. The VA failed to provide reasonable modifications or effective communication under 28 C.F.R. § 35.130(b)(7), and instead substituted retaliatory administrative actions for disability-informed responses.

8. Secretary Doug Collins, in his official capacity, now oversees the Department that is continuing to deny Plaintiff access to care, while publicly claiming commitment to suicide prevention and veteran mental health. He has not taken corrective action.

9. As a result, the Plaintiff has suffered loss of access to vital services, increased psychiatric distress, medical risk, and systemic erasure.

10. The VA's conduct constitutes discrimination in violation of Title II of the Americans with Disabilities Act, entitling the Plaintiff to declaratory and injunctive relief.

**COUNT III: Violation of the Rehabilitation Act of 1973, Section 504**

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

1. Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

2. Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794, prohibits any program or activity receiving federal financial assistance—including the United States Department of Veterans Affairs—from excluding, denying benefits to, or discriminating against any qualified individual with a disability.

3. The Plaintiff is a qualified individual with documented and service-connected disabilities, including post-traumatic stress disorder, traumatic brain injury, and psychiatric conditions caused by combat service and military sexual trauma.

4. The Department of Veterans Affairs is a federally funded entity responsible for providing coordinated medical, psychological, and housing support to disabled veterans and their families.

5. Rather than provide accommodations, continuity of care, or program protections, the Department of Veterans Affairs removed the Plaintiff from trauma-based treatment without process, fabricated records, redirected her to a provider with a forensic prison background, and denied her access to suicide prevention care.

6. Since April 2024, the Plaintiff has continued to suffer through the ongoing denial of access to Community Care, denial of access to Supportive Services for Veteran Families, and denial of a Housing and Urban Development–Veterans Affairs Supportive Housing voucher—despite being legally and medically qualified for each.

7. The Plaintiff, her disabled veteran husband, and their five children remain in crisis as a result of the Department's refusal to provide these services.

8. The current Secretary of Veterans Affairs, Doug Collins, is aware of this record. He has not intervened. He has not corrected the ongoing harm. He has not held any staff at the Washington D.C. Veterans Affairs Medical Center accountable.

9. The Plaintiff alleges not isolated misconduct, but a full systemic collapse—in access, accountability, and protection. This collapse is federally funded, clinically documented, and judicially unremedied.

10. As a result, the Plaintiff is entitled to declaratory judgment, injunctive relief, and all available remedies under Section 504 of the Rehabilitation Act.

**COUNT V: Violation of the Equal Protection Component of the Fifth Amendment**

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

1. Plaintiff incorporates all preceding paragraphs.

2. The Fifth Amendment's Due Process Clause includes an equal protection guarantee, binding upon all federal agencies and actors, including the Department of Veterans Affairs and its leadership.

3. The Department of Veterans Affairs is obligated to administer benefits, services, and medical programs without discriminatory treatment, retaliatory application, or arbitrary removal.

4. Plaintiff was entitled to receive equal access to:

   o Trauma-based mental health services under 38 U.S.C. § 1710 and § 1720D;

   o Suicide prevention intervention as codified in 38 U.S.C. § 1720F;

   o Community Care benefits under the VA MISSION Act of 2018 (38 U.S.C. § 1703);

   o Housing and Urban Development–Veterans Affairs Supportive Housing programs (HUD-VASH);

   o Accommodations and protections under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

5. Instead, the Plaintiff was subjected to:

   o Medical record falsification,

   o Improper medication changes without consent,

       ○   Mischaracterization of her suicidal ideation,

       ○   Misrouting of her care to non-specialist providers,

       ○   Retaliatory labeling as "manic," and

       ○   Institutional redirection away from legally mandated services.

6. These harms were not experienced by similarly situated veterans who did not file complaints, who were not trauma survivors of color, or who did not challenge VA leadership.

7. This constitutes a pattern of discriminatory enforcement and retaliatory policy, actionable under the Equal Protection component of the Fifth Amendment.

**COUNT VI: Declaratory Relief under the Declaratory Judgment Act**

(Against all Defendants in their official capacities)

1. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

2. Pursuant to 28 U.S.C. §§ 2201–2202, this Court has authority to issue a declaratory judgment where an actual controversy exists between parties.

3. A live and justiciable controversy exists between the Plaintiff and the United States Department of Veterans Affairs regarding the legality, propriety, and constitutionality of the retaliatory and discriminatory actions described in this complaint.

4. The Plaintiff has suffered, and continues to suffer, irreparable harm from a pattern of:

       ○   Sudden removal from trauma-based care;

       ○   Falsification of mental health records;

       ○   Mischaracterization of suicidal ideation;

       ○   Coerced medication changes without consent;

       ○   Administrative redirection to non-clinical or inappropriate providers;

      o  Denial of access to Community Care, suicide prevention support, Supportive Services for Veteran Families, and a Housing and Urban Development–Veterans Affairs Supportive Housing voucher.

5. These actions were undertaken by federal officials acting under color of law and with the ongoing knowledge of the current Secretary of Veterans Affairs, who has failed to intervene, investigate, or offer redress.

6. The Plaintiff seeks a declaration that:

      o  The retaliation she experienced for engaging in protected speech violated the First Amendment;

      o  The denial of accommodation and access violated the Americans with Disabilities Act and the Rehabilitation Act;

      o  The removal from care without notice or recourse violated the Fifth Amendment's Due Process Clause;

      o  The unequal application of medical and housing services constituted discriminatory treatment under the Equal Protection Clause.

7. Such a declaration is necessary to define the legal rights of the Plaintiff and to clarify the constitutional and statutory duties of the Department of Veterans Affairs going forward.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in her favor and find that the Department of Veterans Affairs, Dr. Corinne Galgay, and Secretary Doug Collins violated her constitutional and statutory rights under:

      o  The First Amendment (Retaliation),

      o  The Americans with Disabilities Act,

      o  The Rehabilitation Act,

      o  The Fifth Amendment (Due Process and Equal Protection),

- o   And applicable federal regulations.

2. Order a jury trial on all issues so triable, so that the Plaintiff—who was denied voice, process, and protection—may confront her government in the open light of law.

3. Award full compensatory and punitive damages in an amount to be determined at trial, for:

   - o   The medical and psychological harm inflicted,

   - o   The systemic retaliation endured,

   - o   The manipulation of her medical record,

   - o   The trauma caused by forced psychiatric redirection and medication,

   - o   The deprivation of housing, stability, and basic dignity,

   - o   And the loss of the first year of her infant child's life.

4. Issue declaratory relief stating that the Plaintiff's rights were violated by the actions and inactions of named officials under color of federal law.

5. Grant no reinstatement, no referral, and no further contact with the Department of Veterans Affairs. The Plaintiff will never return to the Department of Veterans Affairs. Her trust has been permanently and irreparably severed. She is not asking for services. She is asking for justice.

6. Hold these providers accountable—for what they wrote, for what they covered up, and for what they allowed.

7. Award such other and further relief as this Court deems just and proper, in law and in equity.

Respectfully submitted,

JANE DOE *Jane*

Plaintiff, pro se

*27 May 2025*