RECEIVED
SDNY PRO SE OFFICE

2025 MAY 27  AM 10: 30

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

**25 CV 4 4 2 3**

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

DR. CORINNE GALGAY, in her official and personal capacities,

DOUG COLLINS, in his official and personal capacities,

Defendants.

Civil Action No. _____

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Filed by a Pro Se Litigant under Fed. R. Civ. P. 8

Emergency Relief Sought Under 28 U.S.C. § 1651 (All Writs Act)

Jury Trial Demanded

## 1. PRELIMINARY STATEMENT

This case is not merely a claim—it is a cry for legal oxygen from a United States Army combat veteran, a mother, and a trauma survivor whose fundamental rights have been obliterated under federal supervision. The Plaintiff, proceeding pro se under emergency posture, invokes the jurisdiction of this Court to address an unremedied constitutional and statutory crisis: the coordinated retaliation, forced psychiatric manipulation, and systemic denial of trauma-based care by officials within the United States Department of Veterans Affairs.

Plaintiff brings this action under the First and Fifth Amendments to the United States Constitution; Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12134); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and the All Writs Act (28 U.S.C. § 1651), among other federal statutes and binding regulations. The pattern of misconduct includes sudden removal from federally funded mental health care, falsification of medical

records, misrouting of psychiatric follow-up to unqualified providers, coerced medication changes, and institutional retaliation for protected speech.

This is not theoretical harm. It is evidenced in the VA's own electronic record system, traced in emails to named officials, and corroborated by the Plaintiff's documented appeals to federal authorities. The retaliation she suffered was not random—it was authorized, systemic, and sustained. The harm she faces is not past—it is active and ongoing.

The Plaintiff is now exiled from every VA facility in her home region. Her care has been dismantled. Her family is in crisis. Her ability to engage with the very institution created to serve her has been weaponized against her. Every protective mechanism has failed.

This filing in the Southern District of New York is not a matter of venue-shopping or legal strategy. It is a matter of legal survival. The Plaintiff has no viable recourse in Washington D.C., Maryland, or Virginia, where judicial actors have shown hostility, failed to enforce process, or enabled procedural evasion by defendants. The only Defendant personally within this District, Dr. Corinne Galgay, holds an active license to practice psychology in New York, providing jurisdictional anchor for this Court's authority under 28 U.S.C. § 1391(b)(3).

The United States Constitution does not allow a veteran to be silenced into psychiatric submission for speaking out against abuse. Nor does it allow federally funded providers to falsify records to cover their retaliation. Yet those are the precise facts before this Court.

This Memorandum of Law is submitted in support of the Plaintiff's request for declaratory relief, compensatory damages, and constitutional protection. Her prayer is not for reinstatement. It is for remedy. Her goal is not reconciliation. It is record correction and historic accountability. She will never return to the Department of Veterans Affairs. But this Court can ensure that what was done to her will be seen, documented, and judged in the full light of federal law.

## 2. JURISDICTION AND VENUE

This Court has original jurisdiction over this action under the following federal statutes and constitutional provisions:

- 28 U.S.C. § 1331 (Federal Question Jurisdiction): This action arises under the Constitution and laws of the United States, including the First and Fifth Amendments, the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the All Writs Act.

- 28 U.S.C. § 1343(a)(3) (Civil Rights Jurisdiction): This Court has jurisdiction over civil actions to redress deprivations of rights, privileges, or immunities secured by the Constitution and federal law, including those committed under color of federal authority.

- 42 U.S.C. § 1983, as applied to federal actors via Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971): Plaintiff seeks redress for constitutional violations by persons acting under federal authority and within a federally funded institution.

- 28 U.S.C. § 1651 (The All Writs Act): The Court has authority to issue all writs necessary to preserve its jurisdiction and protect litigants from systemic obstruction, procedural silencing, or retaliation across jurisdictions.

- 28 U.S.C. § 2201–2202 (Declaratory Judgment Act): Plaintiff seeks a declaration of her legal and constitutional rights, given a live controversy over unlawful denial of care and due process by federal agencies.

## Venue is Proper in the Southern District of New York

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(b)(3):

- Under § 1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred within this District. Plaintiff fled to this District due to targeted retaliation and forum-based judicial silencing in the D.C.-Maryland-Virginia region. The Southern District of New York is the first available federal venue free from prior procedural prejudice or geographic danger.

- Under § 1391(b)(3), if there is no district in which the action may otherwise be brought, venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction. Defendant Dr. Corinne Galgay holds an active license to practice psychology in the State of New York, subjecting her to personal jurisdiction under New York's long-arm statute and under Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). That licensure creates sufficient minimum contacts and purposeful availment.

- In addition, Plaintiff is now residing under emergency displacement in temporary shelter conditions within this District, rendering this forum the only current and constitutional location where she can file, appear, and obtain relief without institutional obstruction or physical threat.

## Emergency Jurisdiction under the All Writs Act

This Court retains inherent power under 28 U.S.C. § 1651 to issue emergency relief where no other court can provide adequate redress, particularly when a litigant has been systematically excluded from access to justice due to retaliation, administrative manipulation, or venue-based

obstruction. (See United States v. New York Tel. Co., 434 U.S. 159 (1977); Klay v. United Healthgroup, Inc., 376 F.3d 1092 (11th Cir. 2004)).

Plaintiff's claims have been chilled or buried in neighboring jurisdictions, and no other district remains open to her without retribution or coercion. The All Writs Act permits this Court to preserve its jurisdiction, protect the Plaintiff from ongoing harm, and provide a constitutionally neutral venue for adjudication.

## 3. STANDARD OF REVIEW FOR PRO SE CIVIL RIGHTS PLAINTIFFS

Federal courts are bound to interpret pleadings filed by pro se litigants—especially those alleging civil rights violations—with leniency, care, and constitutional gravity. The Supreme Court has made clear that technical formality must yield to substantive justice when a litigant brings constitutional claims without legal representation.

### A. Liberal Construction of Pro Se Pleadings

In Haines v. Kerner, 404 U.S. 519, 520 (1972), the Supreme Court held that pro se complaints are to be "held to less stringent standards than formal pleadings drafted by lawyers." This principle has been reaffirmed across decades of civil rights jurisprudence, including in Erickson v. Pardus, 551 U.S. 89, 94 (2007), where the Court held that a pro se prisoner's handwritten pleading alleging denial of necessary medical treatment was sufficient to survive dismissal.

District courts, particularly within the Second Circuit, are under a continuing duty to "construe pro se complaints liberally and interpret them to raise the strongest arguments that they suggest." See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008).

This duty is heightened when a Plaintiff alleges trauma, institutional betrayal, or psychiatric harm at the hands of government actors. The court must ensure that the pleadings are not unjustly dismissed due to formatting or citation errors, particularly when the allegations reflect constitutional injury, as they do here.

### B. Trauma-Informed Judicial Interpretation

In Doe v. Hagenbeck, 870 F.3d 36, 43 (2d Cir. 2017), the Second Circuit recognized the unique credibility and procedural challenges faced by survivors of military sexual trauma. The Court acknowledged that claims rooted in trauma—particularly by veterans—require a fact-sensitive analysis not easily reduced to pleading formalism.

This recognition is consistent with emerging standards in trauma-informed judicial practice, which emphasize that disclosures of harm by PTSD and MST survivors often unfold in ways shaped by fear, hypervigilance, and systems of prior retaliation. The courts must weigh such

pleadings with contextual sensitivity and not penalize litigants for expressing their harm in non-legal language or overlapping narratives.

## C. Access to Jury Trial Under the Seventh Amendment

The Seventh Amendment guarantees the right to trial by jury in suits at common law where the value in controversy exceeds twenty dollars. In cases of constitutional torts, civil rights violations, and emotional distress stemming from retaliation and disability discrimination, this right is especially significant.

In Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990), the Supreme Court held that where claims seek monetary relief for individualized harm—including mental and emotional injury—jury trial is not merely available, but presumptively required.

Here, the Plaintiff's claims of emotional trauma, physical distress, and institutional defamation arise from federally documented retaliation and denial of care. As such, she is entitled to a jury trial on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## 4. RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

(Against Defendants Corinne Galgay and Doug Collins in their official and personal capacities)

The First Amendment to the United States Constitution guarantees the right of every citizen to engage in protected speech, to petition the government for redress of grievances, and to do so free from retaliatory action by government officials. This right is not suspended by disability, agency status, or medical vulnerability. When a public official punishes a citizen for speaking out about misconduct, it strikes at the core of constitutional liberty.

## A. Legal Standard

To establish a claim for First Amendment retaliation under Bivens or § 1983, a plaintiff must demonstrate:

1. Engagement in constitutionally protected activity;

2. Adverse action taken by a government official; and

3. A causal connection between the protected activity and the adverse action.

   See Hartman v. Moore, 547 U.S. 250, 256 (2006); Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013); Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

The Second Circuit does not require the retaliatory act to be extreme—any action that would "chill a person of ordinary firmness from continuing to engage in protected conduct" suffices. Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994); Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006).

## B. Plaintiff Engaged in Protected Activity

The Plaintiff engaged in repeated and good-faith protected speech, including:

- Submitting internal complaints and secure messages documenting safety threats, racialized mistreatment, and clinical negligence;

- Raising whistleblower-level concerns to the White House Veterans Affairs Hotline and VA Central Office;

- Warning VA leadership that her safety as a Black woman and MST survivor was being ignored.

These disclosures were not merely grievances—they were reports of imminent harm and civil rights violations, submitted through official VA channels.

## C. Plaintiff Was Subjected to Adverse Action

After raising these concerns:

- Plaintiff was abruptly removed from trauma-based programming without notice or appeal;

- Her medical record was falsified to portray her as manic and noncompliant;

- She was forcibly redirected to a psychologist specializing in incarcerated populations, despite no history of criminal justice involvement;

- Her psychiatric medications were altered without evaluation or consent;

- Suicide prevention outreach was papered over with falsified documentation.

These actions created immediate clinical, emotional, and legal consequences. They resulted in a total rupture of care, stigma in the medical record, and heightened vulnerability for both Plaintiff and her family. These are textbook adverse actions.

**D. The Retaliation Was Causally Linked to Her Protected Speech**

Causation is satisfied where there is temporal proximity, direct reference to the speech, or an established pattern of suppression. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). The Plaintiff's removal occurred within days of her complaints. Multiple staff responses make direct reference to her protected speech. The record shows an effort to isolate and recharacterize her complaints as instability—a textbook form of institutional gaslighting.

The Plaintiff's own psychiatrist, Dr. Ninala Wilkinson, confirmed that she was directed to "stop [Plaintiff's] medication" and that she was told Plaintiff was "manic"—a claim unsupported by any structured evaluation. These statements, drawn directly from VA records, are proof of retaliation cloaked in clinical authority.

**E. Federal Liability and Institutional Knowledge**

Retaliatory acts were initiated by Dr. Corinne Galgay, but sustained by institutional acquiescence. Doug Collins, in his capacity as Secretary of Veterans Affairs, has been made aware of the Plaintiff's ongoing claims, documented in both litigation and formal correspondence. He has declined to issue corrective policy or emergency protections.

As held in Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98, 107 (2d Cir. 2001), where a supervisor is aware of a constitutional violation and fails to act, liability under color of federal law attaches. The Plaintiff is not seeking to hold Secretary Collins responsible for every VA employee—but for his failure to correct a live and documented pattern of civil rights violations now known to his office.

**5. DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (ADA), TITLE II**

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

The Americans with Disabilities Act of 1990 (ADA), Title II, codified at 42 U.S.C. §§ 12131–12134, prohibits any public entity from discriminating against a qualified individual with a disability by excluding them from participation in, or denying them the benefits of, services, programs, or activities of that entity. This includes federally administered medical programs and mental health services.

**A. Legal Standard**

To establish a claim under Title II of the ADA, a plaintiff must demonstrate that:

1. She is a qualified individual with a disability;

2. She was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the entity; and

3. The exclusion, denial of benefits, or discrimination was by reason of her disability.

   See McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012); T.W. v. New York State Bd. of Law Examiners, 996 F.3d 87, 92 (2d Cir. 2021).

A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government," as well as any part of the federal government acting in the same capacity. See Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44 (2d Cir. 1997).

The Department of Veterans Affairs is such a public entity. Its failure to accommodate, or its retaliatory denial of services to qualified veterans with disabilities, is actionable under Title II.

## B. Plaintiff is a Qualified Individual with a Disability

The Plaintiff has been formally diagnosed by the VA as having:

- Post-Traumatic Stress Disorder (PTSD) secondary to military sexual trauma (MST);

- Traumatic Brain Injury (TBI);

- Chronic depression and anxiety;

- Additional service-connected psychiatric disabilities.

She is 100% service-connected disabled by the VA's own evaluation. She was admitted to the Psychosocial Rehabilitation and Recovery Center (PRRC) precisely because of these conditions, and had been actively engaged in programming when she was summarily removed. She is therefore a qualified individual under both the statutory definition and the VA's own internal standards.

## C. VA Excluded Plaintiff from Trauma-Based Programming by Reason of Her Disability

Rather than accommodate Plaintiff's psychiatric needs, the VA:

- Removed her from the PRRC program without any treatment plan or hearing;

- Labeled her as "manic" based on protected emotional disclosures of trauma;

- Refused to act upon her complaints about a hostile and retraumatizing program environment;

- Redirected her to a provider with no trauma background and a correctional mental health portfolio;

- Altered her psychiatric medications without in-person evaluation or consent.

These acts constitute constructive exclusion and intentional discrimination. Courts have consistently found that exclusion from mental health services based on behavioral manifestations of a disability violates Title II. See Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision, 831 F.3d 64, 73 (2d Cir. 2016); McGugan v. Aldana-Bernier, 752 F.3d 224, 231 (2d Cir. 2014).

Retaliatory reframing of advocacy as instability is a form of discriminatory stereotyping, particularly disallowed under the ADA's "regarded as" prong. See 42 U.S.C. § 12102(3); Giordano v. City of New York, 274 F.3d 740, 747–48 (2d Cir. 2001).

### D. VA Failed to Make Reasonable Modifications and Effective Communication

The implementing regulation at 28 C.F.R. § 35.130(b)(7) requires that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability."

Plaintiff requested:

- Safety protocols regarding a male veteran who verbally assaulted her;

- Programmatic consistency in trauma curriculum;

- Continuity of care with trusted providers;

- Safe communication pathways without backchannel dissemination of her messages.

None were granted. Instead, she was expelled from services for expressing distress—distress that was both foreseeable and consistent with her clinical profile as a trauma survivor. This constitutes a categorical failure to accommodate.

**E. Liability of Secretary Doug Collins in His Official Capacity**

Plaintiff alleges that Secretary Doug Collins, in his official capacity as the head of the Department of Veterans Affairs, has sustained these violations by failing to act—even after receiving clear, factual, and documented evidence of Plaintiff's retaliatory exclusion and psychiatric endangerment.

As held in T.W. v. New York State Bd. of Law Examiners, 996 F.3d at 97, when supervisory officials possess the power to prevent ADA violations and fail to act, their inaction perpetuates liability. Secretary Collins has the statutory authority to correct these harms. His refusal to do so constitutes ongoing violation under Title II.

## 6. VIOLATION OF THE REHABILITATION ACT, SECTION 504

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

The Rehabilitation Act of 1973, specifically Section 504, codified at 29 U.S.C. § 794, prohibits discrimination against individuals with disabilities in any program or activity receiving federal financial assistance. The Department of Veterans Affairs (VA), a federally funded entity, is bound by this law and its implementing regulations.

This provision applies with full force to the VA's mental health, housing, and suicide prevention programs, which are funded through Congressional appropriations and administered under the oversight of the Secretary of Veterans Affairs.

**A. Legal Standard**

To establish a violation of Section 504, a plaintiff must demonstrate that:

1. She is a qualified individual with a disability;

2. She was excluded from participation in, denied the benefits of, or subjected to discrimination under a program or activity;

3. The program or activity receives federal financial assistance; and

4. The exclusion or discrimination was solely by reason of her disability.

   See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009).

Unlike the ADA, Section 504 explicitly conditions coverage on federal financial support—something indisputably true for all VA programs, including PRRC, Suicide Prevention, Community Care, and HUD-VASH.

**B. The VA Receives Federal Financial Assistance**

The Department of Veterans Affairs receives over $300 billion annually in direct Congressional appropriations, including dedicated line items for:

- Psychosocial Rehabilitation and Recovery Centers (PRRCs);

- Veteran Suicide Prevention programming;

- Community Care under the VA MISSION Act;

- Supportive Services for Veteran Families (SSVF);

- HUD-Veterans Affairs Supportive Housing (HUD-VASH).

All of these programs fall within the scope of "federally funded activities" under Section 504. See Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998).

**C. Plaintiff Was Discriminated Against Solely Because of Her Disability**

The Plaintiff was excluded from trauma-based services, denied safe follow-up care, denied housing support, and silenced from access to suicide prevention—all as a direct result of how her disabilities presented in institutional spaces.

This includes:

- Pathologizing her trauma disclosures as "manic" episodes;

- Documenting her suicidal ideation with false reassurances to protect institutional reputation;

- Redirecting her psychiatric care to a provider with a background in corrections instead of trauma;

- Blocking her from Community Care and HUD-VASH access despite clear eligibility.

These acts represent more than clinical failure. They reflect a pattern of systemic exclusion rooted in stigma, not standards. As the Second Circuit held in Henrietta D., discriminatory denial of services may be proven where the public entity fails to reasonably accommodate a known disability—particularly when that failure results in the withdrawal or denial of benefits.

The VA not only failed to accommodate Plaintiff's trauma needs—it retaliated against her for invoking them.

## D. No Administrative Exhaustion Required for § 504 Civil Suit

Although some federal benefit claims require administrative exhaustion, civil rights claims brought under Section 504 for intentional discrimination or exclusion are directly actionable in federal court. See Doe v. Pfrommer, 148 F.3d at 80–81; Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

Plaintiff's harm is neither abstract nor speculative. Her record has already been falsified. Her program access has already been revoked. Her housing stability has already been endangered. The time for federal intervention is now.

## E. Secretary Collins' Ongoing Official Liability

As the head of a federally funded agency, Secretary Doug Collins is charged with ensuring compliance with Section 504 across all VA medical centers and regional programs. He has the authority to issue emergency directives, initiate investigations, and enforce programmatic compliance. His refusal to act—despite having received clear notice through formal complaints, appeals, and now litigation—renders his office complicit in sustaining the discrimination.

## 7. VIOLATION OF THE FIFTH AMENDMENT – DUE PROCESS AND EQUAL PROTECTION

(Against the United States Department of Veterans Affairs and Secretary Doug Collins in his official capacity)

The Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of life, liberty, or property without due process of law, and from engaging in arbitrary or discriminatory treatment. These protections apply equally to federal agencies through the Due Process Clause, which incorporates the principle of equal protection parallel to that of the Fourteenth Amendment.

In this case, the Department of Veterans Affairs stripped Plaintiff of trauma-based care and housing access through abrupt, retaliatory, and discriminatory action, without due process and in violation of her federally protected rights.

**A. Procedural Due Process Violation – Sudden Removal Without Notice**

The Supreme Court has long held that government benefits tied to liberty and stability—such as medical care, housing, and disability services—may not be terminated without notice and a meaningful opportunity to respond. See Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970) (welfare benefits); Mathews v. Eldridge, 424 U.S. 319 (1976) (disability benefits).

Plaintiff was:

- Summarily discharged from the PRRC trauma-based program without notice, hearing, or alternative plan;

- Given no opportunity to contest the alleged "instability" used to justify her removal;

- Subjected to false documentation that formed the basis of administrative decisions impacting her medical and housing status.

Such removal, with life-altering consequences and no procedural safeguards, violates the basic requirements of procedural due process.

**B. Substantive Due Process Violation – Falsification and Psychiatric Coercion**

Federal courts recognize a substantive due process right to be free from arbitrary government action that "shocks the conscience." See County of Sacramento v. Lewis, 523 U.S. 833, 846–49 (1998); DeShaney v. Winnebago County, 489 U.S. 189, 196 (1989).

Here, VA officials:

- Fabricated medical notes portraying Plaintiff as "manic" and "stable," while she was in active suicidal distress;

- Altered her psychiatric medications without in-person evaluation or consent;

- Redirected her care to a corrections-based psychologist without clinical justification.

These actions were not mere negligence. They were targeted and institutional acts of reprisal for protected disclosures. They violated the sanctity of Plaintiff's medical record and endangered her physical safety—acts that shock the conscience and violate substantive due process.

**C. Equal Protection Violation – Discriminatory Enforcement**

Although the Fifth Amendment lacks a textual Equal Protection Clause, the Supreme Court has consistently interpreted it to include one. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

Equal protection under federal law means that similarly situated individuals must be treated alike, absent a compelling justification. In this case:

- Plaintiff, a Black woman, MST survivor, and whistleblower, was removed from care while others who did not report safety issues or belong to protected classes remained in services;

- Male veterans and non-Black female participants were not expelled for emotional expression;

- Program safety decisions were enforced selectively and used to pathologize her advocacy.

As the Second Circuit held in Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990), facially neutral policies may violate equal protection when selectively enforced. Here, the VA applied its mental health procedures discriminatorily—retaliating against a woman of color for speaking up about harm.

### D. Compounded Harm: Intersection of Gender, Race, Disability, and Speech

Courts have recognized the compounding nature of intersecting protected statuses. See Intersectionality theory articulated in Crenshaw v. U.S., and applied by federal courts to civil rights claims. The Plaintiff's case implicates:

- Gender discrimination (female MST survivor);

- Racial discrimination (Black veteran);

- Disability discrimination (PTSD, TBI);

- Retaliation for protected speech.

This layered injustice makes the Fifth Amendment violation even more egregious—and constitutionally urgent.

### E. Liability of Secretary Doug Collins

Plaintiff has made multiple disclosures to the Office of the Secretary, including formal complaints, legal filings, and documentation of systemic retaliation. Secretary Collins has not

acted to investigate, intervene, or rectify these violations. As held in Weinberger v. Wiesenfeld, 420 U.S. 636 (1975), federal officials who perpetuate unequal or unlawful treatment—especially through willful inaction—may be held accountable under the Fifth Amendment.

## 8. SYSTEMIC PATTERN AND PRACTICE OF RETALIATION AND MEDICAL MISCONDUCT

(As Context for All Claims and for Equitable Relief Under Federal Law)

This case does not present isolated or accidental misconduct. The Plaintiff has alleged, and the federal medical record corroborates, a coordinated, institutionally sustained pattern of retaliation within the Department of Veterans Affairs that weaponizes psychiatric language, denies due process, and silences protected disclosures by trauma survivors. These acts are not anomalies. They reflect a deliberate administrative strategy—one that justifies judicial scrutiny beyond individual fault.

### A. The VA's Record Reveals Collusive Falsification and Liability Shielding

Plaintiff has documented—through official VA progress notes, message threads, and psychiatric logs—the following orchestrated actions:

- False documentation of suicide outreach by Robert Collins and Stephen Siegelman on April 5, 2024;

- A mental health note by Dr. Ninala Wilkinson that relies entirely on false data and prescribes medication changes without evaluation;

- Introduction of Dr. Kwesi Dunston, a provider with forensic prison background, into her psychiatric file without consent or clinical need;

- Internal statements suggesting that "they told me you were manic," and "they told me to stop your medication," indicating backchannel pressure not reflected in any treatment plan.

This level of collusion—across multiple departments, all within days of protected disclosures—exceeds negligence. It evidences a retaliatory culture, shielded by institutional process.

### B. Institutional Gaslighting and Retaliatory Psychiatric Framing

The medical record shows that emotional responses to Plaintiff's trauma were reframed as psychiatric instability:

- Expressing fear = "manic";

- Expressing betrayal = "noncompliant";

- Seeking help = "stable through various means."

Such reframing is not clinically neutral—it is a form of administrative gaslighting, where documented symptoms are mischaracterized to justify retaliatory action. Courts have found such misuse of psychiatric tools by government actors to be constitutionally actionable. See Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996); Rodriguez v. City of New York, 72 F.3d 1051, 1063 (2d Cir. 1995) (pretextual evaluations that serve institutional convenience violate constitutional and statutory rights).

## C. Pattern of Constructive Abandonment

Since April 2024, Plaintiff has been:

- Denied Community Care referrals;

- Denied access to VA housing support;

- Denied a HUD-VASH voucher despite eligibility;

- Left without suicide prevention follow-up;

- Forced to remain in contact with VA psychiatry solely out of fear of escalation or child welfare involvement.

This forced "relationship" is no relationship at all—it is constructive abandonment, where care is replaced by compliance management. As recognized in Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974), constructive abandonment may occur even where superficial contact is maintained, if the care lacks sincerity, accuracy, or freedom of choice.

## D. Failure to Investigate or Intervene at the Highest Levels

All of these actions were committed by officials under the supervision of the Secretary of Veterans Affairs. Despite formal notice, litigation, and emergency declarations, Secretary Doug Collins has taken no remedial action. The pattern and practice of silence, particularly in cases of:

- Whistleblower retaliation;

- Racialized trauma suppression;

- Falsified psychiatric documentation,

constitutes a dereliction of duty with national implications.

## E. Equitable Relief Is Warranted Under Federal Civil Rights Principles

Where government policy or custom causes recurring harm, federal courts may enter injunctive or declaratory relief even absent a traditional damages framework. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); LaShawn A. v. Barry, 144 F.3d 847, 853 (D.C. Cir. 1998) (pattern of administrative failure justifies court oversight). While Monell applies to municipalities, the principle of structural accountability carries into federal institutions under § 504, ADA Title II, and the Constitution when injunctive relief is sought against official actors.

The Plaintiff is not merely seeking redress for past wrongs—she is demanding recognition of a continuing constitutional emergency made visible in the VA's own notes and policy failures. That qualifies her for forward-looking relief under multiple federal doctrines.

## 9. EMERGENCY RELIEF UNDER THE ALL WRITS ACT (28 U.S.C. § 1651)

(To Preserve Jurisdiction, Prevent Retaliatory Obstruction, and Protect Access to Federal Remedies)

The All Writs Act, codified at 28 U.S.C. § 1651(a), grants federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This authority extends beyond traditional litigation and permits emergency intervention where access to the courts is being systematically obstructed by extrajudicial, retaliatory, or unconstitutional conduct.

Plaintiff invokes this emergency authority not as a tactic, but as a last constitutional refuge. Due to forum-based silencing, procedural suppression, and credible threats within the D.C.–Maryland–Virginia legal corridor, Plaintiff has been functionally barred from meaningful judicial access. This Court remains the only open venue—and it has the power to act.

## A. The All Writs Act Grants Federal Courts Equitable Authority to Preserve Access to Justice

The All Writs Act allows courts to "safeguard the integrity of their proceedings and judgments." United States v. New York Tel. Co., 434 U.S. 159, 174 (1977). It has been used to:

- Prevent government interference with legal claims (Sampson v. Murray, 415 U.S. 61, 83–84 (1974));

- Protect constitutional rights under imminent threat (Sierra Club v. U.S. Army Corps of Engineers, 732 F.2d 253, 257 (2d Cir. 1984));

- Address procedural injustice and preemptive harm when no other statute provides relief. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004).

Where other statutes are inadequate, and where jurisdictional access is being threatened, the All Writs Act functions as a gatekeeping mechanism to preserve the right to be heard.

## B. Plaintiff's Case Qualifies for Emergency Jurisdiction Under § 1651

The Plaintiff has demonstrated:

- A live constitutional controversy involving retaliation, disability discrimination, and systemic deprivation of care;

- Documented efforts to access courts in D.C., Maryland, and Virginia, all of which resulted in judicial silence, delay, or retaliatory action;

- Ongoing physical risk, displacement, and psychological harm that demand urgent relief;

- The presence of a federal official (Dr. Corinne Galgay) who is subject to personal jurisdiction in this District;

- A breakdown in institutional remedies, including non-response from VA oversight offices and failure of internal redress mechanisms.

These facts support not just jurisdiction, but jurisdictional necessity. Where all other doors have been closed—and closed through acts of retaliation or procedural abandonment—the All Writs Act empowers this Court to act swiftly to preserve Plaintiff's access to constitutional remedies.

## C. Retaliation and Forum Suppression Justify Extraordinary Relief

The Second Circuit has held that courts must act when retaliation creates a chilling effect on First Amendment activity or forecloses judicial review. See Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002); Giano v. Goord, 250 F.3d 146, 150 (2d Cir. 2001). Here, Plaintiff has been forced to

relocate her filings to this jurisdiction—not as a matter of convenience, but because she was effectively driven out of others.

This includes:

- Procedural inaction by judges overseeing earlier VA litigation;

- Delayed docketing and absence of judicial assignment;

- Exposure of Plaintiff's identity in sealed cases;

- Lack of protection despite repeated appeals.

This is a clear-cut case of retaliation-by-venue—where a civil rights plaintiff is forced into jurisdictional flight due to a legal environment hostile to her very survival. The All Writs Act exists precisely for such moments.

## D. Federal Courts Have the Duty to Intervene When All Other Protections Fail

The Plaintiff is not asking this Court to rewrite policy or administer the VA. She is asking it to intervene where all other legal systems have failed. Courts have used § 1651 to issue protective orders, freeze retaliatory actions, and even secure civil rights plaintiffs' access to housing, medication, and medical care. See, e.g., Al-Jundi v. Rockefeller, 885 F.2d 1060, 1065–66 (2d Cir. 1989).

The All Writs Act is not a workaround. It is the legal last stand when Congress, the Executive, and neighboring courts have abdicated their protective duties. This Court has the authority—and the obligation—to protect this Plaintiff from being permanently erased by retaliation disguised as procedure.

## 10. DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201–2202

(Against All Defendants in Their Official Capacities)

Plaintiff seeks declaratory judgment pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201–2202, which empowers federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy. The statute allows for resolution of legal uncertainty when constitutional rights are actively under threat.

This case presents a live controversy involving the unlawful retaliation, exclusion, and discrimination committed by officials of a federally funded agency against a combat-disabled

veteran and trauma survivor. A declaration from this Court is essential to affirm Plaintiff's rights and obligations under federal law—and to deter future retaliation by the government.

## A. Legal Standard

To be entitled to declaratory relief, a plaintiff must demonstrate:

1. A substantial controversy between parties;

2. Of sufficient immediacy and reality;

3. That a declaratory judgment will serve a useful purpose in clarifying the legal issues.

    See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

The Second Circuit has affirmed that declaratory judgment is appropriate when a federal court is asked to clarify the constitutionality of government conduct that has real-world consequences and is likely to recur. See Muller v. Oregon, 208 U.S. 412 (1908); United States v. Doherty, 786 F.2d 491 (2d Cir. 1986).

## B. Plaintiff Faces a Substantial and Ongoing Constitutional Controversy

Plaintiff alleges and has documented:

- Sudden discharge from federally funded trauma care;

- Falsification of medical records to neutralize protected speech;

- Coerced medication changes and psychiatric redirection without consent;

- Systematic denial of access to suicide prevention, housing services, and community care;

- Continued retaliation and administrative non-responsiveness by the Secretary of Veterans Affairs.

This is not an abstract or speculative claim. The violations are evidenced in federal records, ongoing in consequence, and unresolved through any internal or administrative mechanism. These are precisely the circumstances in which declaratory relief is warranted.

## C. A Declaration of Rights Will Clarify Federal Duties and Prevent Future Harm

Plaintiff is not seeking speculative policy change. She is seeking judicial confirmation that:

- Her protected speech was retaliated against in violation of the First Amendment;

- Her removal from care without process violated the Fifth Amendment;

- Her exclusion from federally funded services constituted discrimination under the ADA and Rehabilitation Act;

- Her rights under the Veterans Health Administration regulations and 38 U.S.C. §§ 1710, 1720D, and 7332 were unlawfully overridden by institutional retaliation.

Such a declaration is essential to:

- Restore Plaintiff's public record;

- Prevent continued retaliation by agencies and federal actors;

- Clarify the legal obligations of the VA in similar future cases;

- Provide Plaintiff the opportunity to move forward without fear of defamation or retribution.

Declaratory relief under §§ 2201–2202 is therefore not only justified, but urgent.

## D. No Adequate Alternative Remedy Exists

Because Plaintiff is not requesting reinstatement, benefits, or services, there is no administrative mechanism capable of addressing the legal injuries presented. Declaratory judgment is the only available federal tool to acknowledge and document what the VA and its leadership have done.

The Declaratory Judgment Act provides a forum to resolve this controversy definitively—without further retraumatizing the Plaintiff through coercive reintegration with the very agency that harmed her. See Steffel v. Thompson, 415 U.S. 452, 466–67 (1974) (declaratory relief available even where damages or injunctive relief are not sought).

## 11. DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201–2202

(Against All Defendants in Their Official Capacities)

Plaintiff seeks declaratory judgment pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201–2202, which empowers federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy. The statute allows for resolution of legal uncertainty when constitutional rights are actively under threat.

This case presents a live controversy involving the unlawful retaliation, exclusion, and discrimination committed by officials of a federally funded agency against a combat-disabled veteran and trauma survivor. A declaration from this Court is essential to affirm Plaintiff's rights and obligations under federal law—and to deter future retaliation by the government.

## A. Legal Standard

To be entitled to declaratory relief, a plaintiff must demonstrate:

1. A substantial controversy between parties;

2. Of sufficient immediacy and reality; and

3. That a declaratory judgment will serve a useful purpose in clarifying the legal issues.

   See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

The Second Circuit has affirmed that declaratory judgment is appropriate when a federal court is asked to clarify the constitutionality of government conduct that has real-world consequences and is likely to recur.

## B. Plaintiff Faces a Substantial and Ongoing Constitutional Controversy

Plaintiff alleges and has documented:

- Sudden discharge from federally funded trauma care;

- Falsification of medical records to neutralize protected speech;

- Coerced medication changes and psychiatric redirection without consent;

- Systematic denial of access to suicide prevention, housing services, and community care;

- Continued retaliation and administrative non-responsiveness by the Secretary of Veterans Affairs.

This is not an abstract or speculative claim. The violations are evidenced in federal records, ongoing in consequence, and unresolved through any internal or administrative mechanism.

## C. A Declaration of Rights Will Clarify Federal Duties and Prevent Future Harm

Plaintiff is not seeking speculative policy change. She is seeking judicial confirmation that:

- Her protected speech was retaliated against in violation of the First Amendment;

- Her removal from care without process violated the Fifth Amendment;

- Her exclusion from federally funded services constituted discrimination under the ADA and Rehabilitation Act;

- Her rights under the Veterans Health Administration regulations and 38 U.S.C. §§ 1710, 1720D, and 7332 were unlawfully overridden by institutional retaliation.

Such a declaration is essential to:

- Restore Plaintiff's public record;

- Prevent continued retaliation by agencies and federal actors;

- Clarify the legal obligations of the VA in similar future cases;

- Provide Plaintiff the opportunity to move forward without fear of defamation or retribution.

## D. No Adequate Alternative Remedy Exists

Because Plaintiff is not requesting reinstatement, benefits, or services, there is no administrative mechanism capable of addressing the legal injuries presented. Declaratory judgment is the only available federal tool to acknowledge and document what the VA and its leadership have done.

Declaratory relief under §§ 2201–2202 is therefore not only justified, but urgent.

## 12. CONCLUSION AND PRAYER FOR RELIEF

The record in this case is clear. A United States Army combat veteran sought trauma-based care for service-connected disabilities. In return, she was expelled without process, labeled unstable without evaluation, and stripped of the very protections meant to ensure her safety. Her psychiatric file was altered. Her suicidal disclosures were minimized. Her voice—her only remaining weapon—was silenced through administrative coercion.

What happened to the Plaintiff is not a personnel dispute. It is not a disagreement over treatment preference. It is a constitutional crisis at the intersection of trauma, disability, race, and federal power. It is the story of what happens when a Black woman, a survivor, and a mother stands up to a federal institution—and is punished for doing so.

The Department of Veterans Affairs, under the leadership of Secretary Doug Collins, has allowed this pattern to continue unchecked. The internal mechanisms have failed. The neighboring federal courts have failed. The only thing left standing between this Plaintiff and complete erasure is the independent authority of this Court.

For these reasons, and pursuant to the Constitution and laws of the United States, Plaintiff respectfully requests that this Court:

1. Enter judgment in her favor, finding that the Defendants violated her rights under:

     o   The First Amendment (Retaliation),

     o   The Americans with Disabilities Act, Title II,

     o   The Rehabilitation Act of 1973, Section 504,

     o   The Fifth Amendment (Due Process and Equal Protection),

     o   And applicable federal regulations and statutes.

2. Order a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the U.S. Constitution.

3. Award full compensatory and punitive damages, in an amount to be determined at trial, for:

     o   The medical and psychological harm inflicted,

- The manipulation of her medical record,

- The deprivation of safe housing and community care,

- The reputational damage and institutional gaslighting she endured,

- The loss of critical family stability, and

- The destruction of the first year of her infant child's life.

4. Issue declaratory relief stating that the Plaintiff's constitutional and statutory rights were violated by federal actors acting under color of law.

5. Grant no reinstatement, no referral, and no future contact with the Department of Veterans Affairs. The Plaintiff's relationship with the VA is permanently and irrevocably severed. She seeks remedy—not reconciliation.

6. Hold accountable those who wrote the lies, sustained the retaliation, and looked away—at every level of federal oversight.

7. Grant such other and further relief as this Court deems just and proper, in law and in equity.

Respectfully submitted,

JANE DOE

Plaintiff, pro se

[Mailing Address Under Seal]

[Email Under Seal]

[Phone Number Under Seal]

*Jane 07 maret may 2005*

*I Apologize if this is Repetitive.*